UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED
MAY 17 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

MURPHY M. HUBBARD

Plaintiff,

v.                                  Case No. 1:07 00023-RMU

UNITED STATES

Defendants.

## PLAINTIFF'S ANSWER TO UNITED STATES OPPOSITION TO PLAINTIFF'S MOTION FOR EMERGENCY TEMPORARY AND PRELIMINARY RELIEF

Plaintiff wishes to inform the Court that in this action, Plaintiff is acting pro se, and as such, his pleadings should be liberally construed per *Haines v. Kerne,* 404 US at 520. As the United States has not challenged jurisdiction, no jurisdictional statement will be included in this motion.

The Plaintiff also wishes to inform this court that he is filing this brief a little blind, as he has never been served with the second agency decision on appeal. Plaintiff made the Office of Professional Responsibility (OPR), Department of Justice (DOJ), this Court and the Internal Revenue Service (IRS) aware of this in the initial filing and OPR mailed him the first agency decision on appeal, but not the second agency decision on appeal[1].

The United States claims in their opposition that Plaintiff's reliance on Schulz I and Schulz II is misplaced (or to quote the United States; "not on point at all".) The

---

[1] This could be a clerical mistake such as the misspelling of Schulz three (3) times on page one (1) of the Government's opposition to Plaintiff's motion for emergency temporary and preliminary relief or it could be a deliberant attempt to obfuscate.

Page 1 of 10

United States goes further stating the Schulz's cases do not prevent the Treasury Department from making administrative decisions prior to court litigation. The Plaintiff never stated that the Internal Revenue Service or the Treasury Department could not make administrative decisions prior to court litigation. Rather the Plaintiff stated that "no harm" could befall him until the administrative decision was giving judicial review. The United States has conceded harm to the Plaintiff has occurred.

Referring to the Schulz cases:

The *two* 2nd Circuit orders in *Schulz* ((*Schulz v. IRS*, 395 F.3d463 (2d Cir. 2005) *Schulz I* and *Schulz v. IRS*, 413 F.3d 297 (2d Cir. 2005)(*SchulzII* )) specifically address the issue of Due Process protections with respect to IRS administrative acts and which explicitly require an Article III judicial hearing before Plaintiff can be injured by such an administrative action.

<u>In *Schulz II*, the Court held that the Due Process principles it was applying would apply to **all** administrative directives and orders.</u>

> "The rules of due process upon which were relied in *Schulz I*, and upon which we rely now, can be stated thus: **any legislative scheme that denies subjects an opportunity to seek judicial review of administrative orders except by refusing to comply, and so put themselves in immediate jeopardy of possible penalties 'so heavy as to prohibit resort to that remedy,'** *Oklahoma Operating Co. v. Love*, 252 U.S. 331, 333, 64 L. Ed. 596, 40 S. Ct. 338 (1920), **runs afoul of the due process requirements of the Fifth and Fourteenth Amendments. This is so even if 'in the proceedings for contempt the validity of the original order may be assailed.'** *Id.* at 335; *see also Reisman*, 375 U.S. at 446; *Ex parte Young*, 209 U.S. 123, 147-48, 52 L. Ed. 714, 28 S. Ct. 441 (1908)." *Schulz II* (*Schulz v IRS*, 413 F. 3d 297, 303 (2d Circuit, 2005)."

> **"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."** *Ellrod v.Burns (1976) 427 U.S. 347, 373, 96 S.Ct. 2673, 2690.* (emphasis added)

Nowhere in the above quote is it stated that this ruling will only apply to administrative summons. Rather the emphasized portions clearly state the Due Process principles would apply to all administrative directives and orders. This action is a case filed under the Administrative Procedures Act (APA). The Internal Revenue Code statutes and 31 U.S.C. 330, which the United States is quoting in their opposition is misplaced and is not on point.

Regulations under section 330 are promulgated in 31 CFR part 10 and are reprinted as Treasury Department Circular No. 230. It appears to Plaintiff that Circular No. 230 is somewhat incomplete as nowhere in this document is it stated that a disbarred individual has the RIGHT of Judicial Review of the Agency's Decision. It is interesting to note upon reading of circular 230, that in §10.78 the word "agency" is used as a pronoun before the word decision. Yet in §10.79 the word "final" is used as the pronoun for decision and in §10.80 the pronoun "final" is used before the noun "order". This may be just semantics or it could be that the government realizes that these actions are reviewable by a United States District Court and the authors of sections 10.78 and 10.79 knew this, yet did not want to convey this message. So they intentional left out the pronoun agency (in front of the noun decision or order) as this would be in error and did not use "final district court decision" as they do not want the public to realize that no harm can befall a practitioner until they have exhausted their due process rights in United States District Courts. Circular 230 is incomplete by not stating that one is not officially or legally disbarred until such time as a United Stated District Court Judge rules that the agency decision is upheld.

Upon review of DOJ's press releases it appears to the Plaintiff that the Office of Professional Responsibility has started rigorous enforcement of certain sections of Circular 230 in recent years (since approximately 2001) and Plaintiff believes this may be the cause of the United States' incorrect assertion that harm can befall Plaintiff before judicial review as it appears the United States is in the learning curve stage of Circular 230 enforcement. The United States quoting of a 1976 case regarding a "full-blown" hearing seems misplaced, as no where in Circular 230 can the term "full-blown" be found. The United States reliance on an over thirty (30) year old case rather than the actual statues is in the least disingenuous.

The United States seems to claim the Treasury Department cannot be challenged in District Court. The following statute proves this assumption is false for levies[2] and with the other arguments presented seems to make a challenge in District Court automatic for any administrative action or decision:

> "Title 26 Section 7426(b) Adjudication
> The district court shall have jurisdiction to grant only such of the following forms of relief as may be appropriate in the circumstances:
>     (1) Injunction
> If a levy or sale would irreparably injure rights in property which the court determines to be superior to rights of the United States in such property, the court may grant an injunction to prohibit the enforcement of such levy or to prohibit such sale."

The United States' contention that Plaintiff cannot show a substantial likelihood of success on the merits, since he received an administrative hearing and even an appeal prior to the disbarment is premature and without merit. Plaintiff filed the appeal of an

---

[2] The United States claims in their opposition that Schulz I and II do not prevent the Treasury Department from making administrative decisions prior to federal court litigation. Sure, the Treasury can make a decision, but this decision can be enjoined in Federal Court until the court has issued a ruling.

"agency" decision to articulate how the hearings and appeal did not follow the law, did not address all the evidence and arguments raised or follow cogent reasoning and why the sanction of disbarment is an abuse of discretion.

Some of the issues that this court will be requested to review are the following:

1. After Plaintiff received the initial complaint letter (which offered a 40-month suspension) the Plaintiff pointed out some errors in this letter[3]. The agency's reply was that now instead of a 40-month suspension, the agency was going for disbarment. This action by the OPR is draconian.

2. The Plaintiff was not allowed any of the witnesses he requested.

3. The Plaintiff was not allowed to introduce any of his evidence.

4. The Plaintiff was not allowed any discovery.

5. The Plaintiff was not allowed to depose anyone.

6. Mr. Finz (an attorney for the defendant in this action) admitted on the stand the Petitioner did not appear to have a filing requirement for some of the years at issue.

It appears to be Standard Operating Procedure for the Office of Professional Responsibility to seek disbarment in any proceeding in which the subject of the proceeding will not accept the recommended action (which in Plaintiff's case was a suspension of forty (40) months). This appears to be a draconian approach to settle these cases.

---

[3] These errors were in the Plaintiff's favor and led the OPR to dismiss some of the allegations in the initial complaint.

The ALJ became a prosecutor for the Government during the hearing in Pineville when the government's attorney appeared to be "napping". The Government's main witness, Mr. Finz, became a prosecutor after his testimony as he was allowed to sit at the government counsel's table and appeared to be coaching the government's attorney.

Petitioner assumed the hearing's purpose was to work out an agreeable settlement with both sides regarding the issues, much like Petitioner has helped work out settlements between his clients and the IRS in his over 25 years of practice. This turned out not to be case, rather it appears the hearings were some type of "Star Chamber" proceedings designed to cement the government's foregone conclusion to disbar Petitioner for not accepting their initial offer of a 40-month suspension.

During the May 2004 Section of Taxation Meeting in Washington, D.C., the Director, IRS Office of Professional Responsibility ("OPR"), discussed significant changes being made in OPR and asked whether Special Trial Judges ("STJs") of the United States Tax Court ("Tax Court") would be a more appropriate trier of fact in OPR disciplinary hearings than the administrative law judges ("ALJs") who currently hear these cases. In response to this inquiry, the Section of Taxation's Standards of Tax Practice Committee formed a task force to study the disciplinary process[4]. The following is a quote from page three (3) of this report:

"The IRS is increasing its enforcement activities, emphasizing particularly high-income taxpayers, tax shelters, offshore financial activities, and crimes. As part of these efforts, the IRS has enabled OPR to expand its enforcement activities with respect to tax advisers. The size of OPR's staff has approximately doubled, the size of its enforcement staff has approximately tripled, and OPR has requested additional funding to support further staff increases. These staffing increases should enhance OPR's substantive tax expertise and its ability to scrutinize complex tax schemes. **Also, OPR intends to shift its focus from targeting practitioners' personal compliance with the tax code to pursuing a limited number of significant cases. Accordingly, OPR is expanding its**

---

[4] This report can be found at the following url http://www.abanet.org/tax/pubpolicy/2005/051207opr.pdf.

**inventory of cases involving higher impact on the tax system, especially those deemed to involve tax shelters."** (emphasis added)

This quote indicates the Director of OPR is not now so concerned with a Practitioner's personal compliance problems as they are with pursing cases that involve flagrant violations of the Internal Revenue Laws, which do cause harm to persons' other than the practitioners[5]. The Plaintiff agrees with this approach as destroying a practitioner's life because of what may be some personal problems versus overt attempts to undermine the Internal Revenue Laws seems to be more in line with disbarment and is not viewed as the OPR taking such a Draconian approach in its enforcement regime that appears to be an abusive of discretion.

Also contained in this report on page six (6) are the ALJ's primary duties:

4. ALJ Powers
In contested matters, the ALJ has three principal duties: (i) to conduct the hearing, (ii) to render decision, and (iii) **to prepare a full record of the proceedings to facilitate review. In some situations, ALJs may also facilitate settlements**. (emphasis added)

The highlighted text above raises two issues regarding this case.

1. The ALJ never attempted to facilitate settlement in this proceeding.

2. The United States' in point number three (3) of their memorandum of points and authorities in support of its motion for enlargement of time to answer or otherwise plead states that they attempted to obtain the records from the office of the ALJ and point number four (4) states Officials at the Department of Treasury are presently searching for records. The preceding discussion regarding the duties ALJ makes these points moot as the United States should have known where these records are located and

---

[5] Unlike when a practitioner has compliance problems, the only person being harmed is the practitioner and maybe a millisecond of government spending.

should not need or be allowed any time outside of the time they are allowed per the FRCP.

In a press release dated April 25, 2007[6] Senate Finance Committee Chairman Max Baucus (D-Mont.) and Ranking Republican Chuck Grassley (R-Iowa) have revealed that 450,000 Federal workers and retirees owe nearly $3 billion in back taxes to the Federal treasury. In a letter to President Bush, Charles Grassley asked the President to instruct heads of executive departments and agencies to remind Federal employees and retirees of their tax obligations and to warn them of the consequences for failing to comply with our nation's tax laws[7].

Surely if some 450,000 Federal workers and retirees owe back taxes and still have their jobs and or benefits the OPR could have allowed the same treatment for Petitioner. Petitioner went through a great deal of personal and financial difficulties during the time that the disbarment proceedings are concerned, yet he was not offered a chance to rectify his non-compliance, he was only offered being put out of business, while Federal employees and retirees, being paid from tax dollars, are allowed to continue being paid with our tax dollars during their periods of non-compliance. This is not justice and keeping those employees on government payrolls surely does not serve the public interest.

Petitioner regrets that he was not allowed to video record the proceedings, as it would be enlightening to watch the ALJ, as he appeared dumb-founded and confused by the government's technical witness Ms. Grant. The ALJ did double and triple takes at Ms. Grant during her testimony, which leant support to the Plaintiff (if one could see a

---

[6] http://www.senate.gov/~finance/press/Bpress/2007press/prb042507c.pdf
[7] The employees that were identified more than likely enrolled in the Federal Government Employee Assistance Program to help them with their finances and attitude towards paying federal income taxes.

video of the ALJ during Ms. Grant's testimony, one would be wondering if the ALJ had pains similar to a whiplash victim after her testimony). After a lunch break and the opportunity to be coached by the government attorney and Mr. Finz, Ms. Grant was again called as a witness and maintained her position on the issues. It was clear the ALJ, the government's attorney and Mr. Finz did not like the witness to go off the "reservation" with her testimony. Again one could see disdain in the ALJ's and United States' representatives faces.

The ALJ and the Department of Treasury did not comment on some of the facts Petitioner established in his favor such as during the period of alleged non-payment, the Petitioner was in bankruptcy. As the government was unable to find this information on Choice Point (this appears to be the database the government uses to find out information regarding the citizens the United States) the government suggested that Petitioner was lying regarding filing for bankruptcy protection and the ALJ followed along even after being provided proof of the bankruptcy.

These are just a few of the points upon which Petitioner is offering as proof of his substantial likelihood of success on the merits in this action. Plaintiff admits he did receive an administrative hearing and an appeal consideration. Plaintiff does not admit that the aforementioned were unbiased and addressed all the issues and matters of law that are now elements of the case. Plaintiff avers the sanction of disbarment for the counts sustained by the Department of Treasury is an abuse of discretion.

Petitioner is and always has been more than willing to work out an arrangement to address his deficiencies, but because of OPR's Draconian attitude, they have been unwilling to accept nothing less than to force Petitioner out of business. Petitioner is not

a "tax protestor" nor does Petitioner promote abusive tax avoidance schemes, which the Director of OPR stated was going to be OPR's new focus during the 2004 Section of Taxation Meeting. Over the years of his practice, Petitioner has helped many non-filers "get back into the system". Because of the aforementioned it is only logical that Petitioner be allowed to continue to practice.

Petitioner avers that upon an unbiased review of the entire record of this case, the United States District Court will find in the favor of Petitioner and the decision of the Department of Treasury to disbar Petitioner will be over-turned.

Petitioner requests that this court immediately order the United States to provide Plaintiff with a copy of the records of the administrative hearing referred to in the United States' motion for enlargement.

**This harm is ongoing and irreparable, therefore an Expedited ruling on the Motion for Temporary and Preliminary Relief is requested**[8].

Respectfully submitted:

Dated: May 15, 2007

Signature   Murphy M. Hubbard, Pro Se
425B W Farm Rd 182
Springfield, MO 65810
Telephone: (417) 881-1738
Facsimile: (417) 881-3590

---

[8] Plaintiff is confused regarding the ruling on the motion for enlargement filed by the United States on the same date as the opposition motion. An order granting the motion of enlargement to April 23, 2007 was entered on April 24, 2007. Plaintiff being pro-se does not understand how a ruling granting something at a previous date can be entered after the period has expired.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MURPHY M. HUBBARD

**Plaintiff,**

v.                                                              Case No. 1:07 00023-RMU

UNITED STATES

**Defendants.**

## ORDER

It is hereby ORDERED, this _____ day of _____, 2007, in Washington, D.C., that upon consideration of the plaintiff's motion for emergency temporary and preliminary relief, the United States' opposition to Plaintiff's motion for emergency temporary and preliminary relief, the Plaintiff's answer to United States opposition to Plaintiff's motion for emergency temporary and preliminary relief, and the entire record of this proceeding, that the Plaintiff's motion for emergency and temporary relief is GRANTED.

It is further ORDERED that the United States' is to mail Plaintiff the entire record of the administrative hearing.

It is further ORDERED that the Internal Revenue Service and the Office of Professional Responsibility are enjoined from listing Plaintiff as being disbarred to practice before the Internal Revenue Service pending the outcome of this Action.

It is further ORDERED that the United States provide Petitioner with a copy of the Final Agency Decision in this action.

Finally it is ORDERED that the Internal Revenue Service and the Office of Professional Responsibility reinstate Petitioner as eligible to practice before the Internal Revenue Service as the United States has failed to answer or otherwise plead within the enlarged timeframes of April 23, 2007.

_____
UNITED STATES DISTRICT JUDGE

# CERTIFICATE OF SERVICE

It is hereby certified that the forgoing Plaintiff's answer to United States' opposition to Plaintiff's motion for emergency temporary and preliminary relief, and proposed order have been served this 15th day of May, 2007 via priority mail, postage prepaid, addressed as follows:

Dashiell C. Shapiro, Trial Attorney
U.S. Dept of Justice
PO Box 227
Washington DC 20044

And:

Clerk's Office
U.S. District Court for the District of Columbia
333 Constitution Ave, N.W.
Washington DC 20001


May 5, 2005
Date                                                          Murphy M. Hubbard, Pro Se