**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| MURPHY M. HUBBARD, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 07-0023 (RMU) |
| | : | | |
| v. | : | Document No.: | 2 |
| | : | | |
| UNITED STATES OF AMERICA *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**DENYING THE PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF**

**I.     INTRODUCTION**

The *pro se* plaintiff brings suit, alleging that the Department of the Treasury wrongfully

disbarred him from representing clients before the Internal Revenue Service ("IRS").  He asks the

court to enjoin the defendants from enforcing his disbarment until the court can review the

agency's action on the merits.  The plaintiff also seeks to prevent the defendants from advertising

in public notices that he is disbarred.  The defendants oppose the motion, arguing that the

Department of the Treasury is statutorily authorized to suspend or disbar an individual from

representing clients before the IRS after it provides the individual with notice and an opportunity

to be heard.  Moreover, the defendants argue that the plaintiff received notice and a "full-blown"

hearing that satisfied its statutory obligations to the plaintiff.  Because it concludes that the

plaintiff has not demonstrated a substantial likelihood of success on the merits, the court denies

the plaintiff's motion for injunctive relief.

## II.    BACKGROUND

### A.    Factual History

The parties' briefing of the instant motion fails to provide the court the courtesy of a description of the relevant facts or dates.  The court, therefore, relies on the parties' arguments, as best it can, and draws from the administrative record in constructing the facts pertinent to the present dispute.

The plaintiff is a certified public accountant who was previously qualified to represent clients appearing before the IRS.  Administrative R. ("AR") at 8; Pl.'s Mot. for Emergency Temporary and Prelim. Relief ("Pl.'s Mot.") at 1.  On April 16, 2002, the plaintiff received a letter from the IRS Office of Director of Practice advising him that the IRS had "information raising questions concerning possible violations . . . of the regulations governing practice before the Internal Revenue Service."  AR at 1089.  The defendants allowed the plaintiff 30 days to respond to the information and held further action on the matter in abeyance for that time.  *Id*.

On April 13, 2003, the defendants initiated an administrative complaint against the plaintiff claiming that he failed to file federal income tax returns, both personal tax returns and corporate tax returns for the Hubbard Group, P.C., for 1997, 1998, 1999 and 2000.  AR at 265-66; Compl. at 2-3; Defs.' Opp'n to Pl.'s Mot. ("Defs.' Opp'n") at 2-3.  The IRS also charged the plaintiff with failing to deposit and pay employment taxes for the Hubbard Group, P.C. for several quarters.  AR at 266.  At some point later, the IRS Office of Professional Responsibility demanded that the plaintiff "voluntarily submit to a 40-month suspension."  Compl. at 4.  The plaintiff, presumably, refused the voluntary suspension.  *See* Pl.'s Mot. at 3.  As a result, the defendants sought the plaintiff's disbarment.

Although the briefing of the administrative proceedings in this case is inadequate, the

Administrative Record reveals that, on April 24, 2003, the proceedings were assigned to an

Administrative Law Judge ("ALJ").  AR at 34.  The plaintiff subsequently received a hearing

before an ALJ, and that ALJ ruled in favor of disbarment on January 14, 2004.  *Id*. at 265-77.

"More than a year" later, the IRS published in the Internal Revenue Bulletin a notice that the

plaintiff had been disbarred.  Pl.'s Mot. at 5.  The plaintiff appealed the ALJ's decision, and on

August 30, 2004, the appellate ALJ issued a decision affirming the ALJ's decision in part and

remanding it in part for additional findings.  AR at 32-91.  On remand, the ALJ held a hearing

and, on July 1, 2005, issued his decision on remand.  *Id*. at 230-64.  The plaintiff again appealed,

and on September 20, 2006, an appellate ALJ issued a final decision affirming the plaintiff's

disbarment.  *Id*. at 24-30.

### B.     Procedural History

On January 4, 2007, the plaintiff filed suit to challenge his disbarment.  He

simultaneously moved for injunctive relief, asking the court to prevent the IRS from either

disbarring the plaintiff or issuing public notice of his disbarment pending this court's review of

his underlying challenge to the disbarment.  On March 30, 2007, nearly two months after

receiving notice of the plaintiff's motion, the defendants opposed the plaintiff's motion for

injunctive relief.[1]  On May 18, 2007, nearly two months later, the plaintiff filed a reply.


### III.    ANALYSIS

### A.    Legal Standard for Injunctive Relief

This court may issue interim injunctive relief only when the movant demonstrates:

> (1) a substantial likelihood of success on the merits, (2) that it would suffer
> irreparable injury if the injunction is not granted, (3) that an injunction would not
> substantially injure other interested parties, and (4) that the public interest would be
> furthered by the injunction.

*Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (quoting *CityFed Fin.*

*Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)); *see also World Duty*

*Free Americas, Inc. v. Summers*, 94 F. Supp. 2d 61, 64 (D.D.C. 2000).  It is particularly

---

[1]    Local Civil Rule 7 allows a party eleven days in which to oppose a motion, LCvR 7(b),
and the movant has 5 days from that date in which to file a reply, LCvR 7(d).  The
defendants responded to the plaintiff's motion nearly two months after receiving notice
of the plaintiff's filings.  Because the defendants failed to respond to the plaintiff's
motion within the allotted time, the court could grant the motion as conceded.  *Id*.;
*Giraldo v. Dep't of Justice*, 2002 WL 1461787, at *1 (D.C. Cir. July 8, 2002) (citations
omitted).  Nevertheless, the plaintiff is not entitled to injunctive relief, and the court in
its discretion will not to grant the plaintiff's motion as conceded.

The court also notes that on the same date they filed their out-of-time opposition to the
plaintiff's motion, the defendants moved for an extension of time in which to file their
answer to the plaintiff's complaint.  Curiously, the defendants' request for enlargement
of time made no mention of the late-filed opposition.  Following the defendants'
example, the plaintiff filed his reply brief on May 18, 2007, 41 days late, without
requesting leave of the court to late-file his reply.

Lest there be any misunderstanding, the court takes this opportunity to make clear that
this case is governed by the Federal Rules of Civil Procedure, the Local Civil Rules, and
the court's Standing Order.  From this point forward, the court will accept no filings that
fail to comport with the requirements, as to timeliness and otherwise, outlined therein.

important for the movant to demonstrate a substantial likelihood of success on the merits. *Cf.*

*Benten v. Kessler*, 505 U.S. 1084, 1085 (1992) (per curiam). Indeed, absent a "substantial

indication" of likely success on the merits, "there would be no justification for the court's

intrusion into the ordinary processes of administration and judicial review." *Am. Bankers Ass'n*

*v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999) (internal quotation

omitted).

The four factors should be balanced on a sliding scale, and a party can compensate for a

lesser showing on one factor by making a very strong showing on another factor. *CSX Transp.,*

*Inc. v. Williams*, 406 F.3d 667 (D.C. Cir. 2005) (citing *CityFed Fin. Corp.*, 58 F.3d at 747). "An

injunction may be justified, for example, where there is a particularly strong likelihood of success

on the merits even if there is a relatively slight showing of irreparable injury." *CityFed Fin.*

*Corp.*, 58 F.3d at 747.

Moreover, the other salient factor in the injunctive relief analysis is irreparable injury. A

movant must "demonstrate at least 'some injury'" to warrant the granting of an injunction.

*CityFed Fin. Corp.*, 58 F.3d at 747 (quotation omitted). Indeed, if a party makes no showing of

irreparable injury, the court may deny the motion for injunctive relief without considering the

other factors. *Id.*

Because interim injunctive relief is an extraordinary form of judicial relief, courts should

grant such relief sparingly. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). As the Supreme

Court has said, "[i]t frequently is observed that a preliminary injunction is an extraordinary and

drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the

burden of persuasion." *Id.* (citation omitted). Therefore, although the trial court has the

Case 1:07-cv-00023-RMU    Document 12    Filed 08/03/2007    Page 6 of 14


discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly.  In

addition, any injunction that the court issues must be carefully circumscribed and tailored to

remedy the harm shown.  *Nat'l Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C.

Cir. 1990) (citation omitted).

### B.    The Court Denies the Plaintiff's Motion for Injunctive Relief

### 1.    The Plaintiff has Not Demonstrated a Substantial Likelihood of Success on the Merits

The plaintiff's argument for injunctive relief centers on his claims of irreparable injury.[2]

Because the plaintiff is acting *pro se*, the court independently analyzes his likelihood of success

on the merits.  Under the Administrative Procedures Act, 5 U.S.C. § 702 ("APA"), the plaintiff

may succeed on his claims by showing that the defendants' action in disbarring him was

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C.

§ 706; *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 736 (D.C. Cir. 2001).

In making this inquiry, the court "must consider whether the [agency's] decision was based on a

consideration of the relevant factors and whether there has been a clear error of judgment."

*Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989) (internal quotations omitted).  At a

minimum, the defendants must have considered relevant information and articulated an

explanation establishing a "rational connection between the facts found and the choice made."

*Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986); *Tourus Records*, 259 F.3d at 736.  To

determine the plaintiff's likelihood of success on the merits, the court looks to the administrative

---

[2]    In one brief yet convoluted sentence, the plaintiff argues that he has a "high likelihood of success on the merits as the DOA [] does not address all issued [sic] raised and for reasons stated above."  Pl.'s Mot. for Emergency Temporary and Prelim. Relief at 5 ("Pl.'s Mot.").

record. *Am. Bioscience v. Thompson*, 243 F.3d 579, 582 (D.C. Cir. 2001) (stating that before

assessing the plaintiff's probability of success on the merits in an APA case, the district court

should have required the defendant to file an administrative record because the APA requires the

court to review "the whole record or those parts of it cited by a party") (citing 5 U.S.C. § 706).

**a.    The Plaintiff has Not Demonstrated that His Disbarment
was Arbitrary, Capricious or An Abuse of Discretion**

A court will set aside an administrative decision to disbar an individual only if the action

was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. *Lopez v. U.S.*, 129

F. Supp. 2d 1284, 1288 (D.N.M. 2000); *see also* 5 U.S.C. § 706; *Tourus*, 259 F.3d at 736.  To

succeed on his claims, the plaintiff must show that the record lacks substantial evidence in

support of the challenged administrative action.  *Lopez*, 129 F. Supp. 2d at 1288; *Washburn*, 409

F. Supp. at 10.

Without addressing the evidence on the record, the plaintiff argues that he had a good

faith belief for not filing a tax return.[3]  Compl. at 3.  He also alleges that the IRS failed to

establish that he had income sufficient to trigger the filing requirements.  *Id*. at 2-3.  This is the

---

[3]    Absent citations to the record, to any evidence, or to any useful factual allegations, the
plaintiff asserts that "[t]he record does indicate Plaintiff did possess this good faith belief
as evidenced by Plaintiff stating that during his years of practice, taxpayers he has
represented whom have had less serious events happen in their lives . . . have had
penalties for failure to file abated with the IRS."  Compl. at 3.  The plaintiff has not
suggested that the ALJs were required to consider whether he had a good faith belief that
he was not required to file tax returns for the relevant years, and there is no evidence that
the plaintiff raised this argument on appeal.  Nevertheless, the evidence referenced in the
administrative decisions and cited herein supports the ALJs' conclusions that the
plaintiff was on notice that he was subject to filing requirements.  What's more, the
ALJs' determinations of willfulness undercuts any suggestion by the plaintiff that he
acted in good faith.  *See* Pl.'s Mot. at 3 (quoting the appellate Judge as stating that,
"Even if one were to believe Plaintiff that he intended to eventually file the required
returns (a belief that Judge Moran was unwilling to embrace, a judgment I share), that
would not be the basis for finding that Plaintiff's failures were not willful").

case, he argues, because the ALJ in the hearing failed to consider the plaintiff's status as sole

shareholder of an S-Corporation (i.e. the Hubbard Group, P.C.) and failed to determine whether

"the S-Corporation had a profit or loss and therefore cannot determine Plaintiff's gross income."

*Id*. at 3. Because it was not able to determine the plaintiff's income, he argues, the IRS could not

prove that he was required to file tax returns. *Id*. at 2-3.

At the hearing on remand, the ALJ addressed whether the plaintiff had income sufficient

to trigger the filing requirements. Indeed, contravening the plaintiff's argument, the ALJ

specifically considered the lack of information related to the Hubbard Group, P.C.'s income. AR

at 237. The IRS's witness at the hearing on remand testified to the plaintiff's "extremely late"

filing of his year 2000 tax return. *Id*. at 238. In addition, the plaintiff requested several

extensions of time in which to file. Both the IRS and the ALJ concluded that these two actions

indicated that the plaintiff "believed he had income sufficient to trigger the requirement to file a

1040 for the 2000 tax year." *Id*.

In addition, the ALJ pieced together evidence from the plaintiff's wife's tax returns for

the relevant years and determined that the plaintiff need only "have earned an amount slightly

*under* an adjusted gross income of $3000 to have triggered a duty to file his 1040's for 1998,

1999, and 2000." AR at 240 (emphasis in original). The ALJ also referenced voluminous

evidence the IRS "produced . . . apart from the fact of [the plaintiff's] acknowledged vigorous tax

practice, which was indicative that he met the tiny income thresholds needed to trigger the duty

to file the subject 1040s." *Id*. This additional evidence included documents reflecting mortgage

interest paid, other sources of taxable income, including a distribution from American Family

Life Insurance Company and savings bond income, a capital loss, and third-party financial

information. *Id*. at 240-44.  To the ALJ, this evidence was more than sufficient to support his

conclusion that the plaintiff had the requisite income to trigger a duty to file tax returns.  *Id*. at

244, 248.

Other than his blanket assertion that the IRS did not produce sufficient evidence to prove

that he was obligated to file tax returns for the years 1998, 1999, and 2000, the plaintiff has not

countered the ample evidence considered by the ALJ.  This is insufficient to rebut the

"presumption in favor of the validity of an administrative action." *Bristol-Meyer Squibb Co. v.*

*Shalala*, 923 F. Supp. 212, 216 (D.D.C. 1996).  Therefore, the court concludes that the plaintiff

has not demonstrated that there was a lack of evidence to support his disbarment or that the

agency decision was not based on consideration of the relevant factors or sufficient facts.  *Lopez*,

129 F. Supp. 2d at 1288; *Washburn*, 409 F. Supp. at 10; *Citizens to Pres. Overton Park*, 401 U.S.

402, 416 (1971).

**b.    The Plaintiff has Not Demonstrated that His Disbarment was Contrary to Law**

The plaintiff asserts that the ALJ improperly issued its "Decision on Appeal Complaint

No. 2003-5" ("DOA") disbarring the plaintiff and "prematurely" published notice of his

disbarment in the Internal Revenue Bulletin 2006-28 (Nov. 27, 2006).   Pl.'s Mot. at 2.

Specifically, the plaintiff believes that the defendants violated his due process rights[4] and that the

IRS did not prove that he had a duty to file tax returns for the relevant years. *Id*. at 4. Because of

this, the plaintiff believes the defendants' actions are contrary to law in violation of the APA.

The defendants counter that the Secretary of the Treasury is statutorily authorized to "suspend or

disbar" individuals practicing before the IRS. Defs.' Opp'n at 2. Moreover, the defendants

argue that the plaintiff was only statutorily entitled to "notice and an opportunity for a

proceeding." *Id.* To the defendants, the IRS more than satisfied this statutory requirement by

providing the plaintiff with administrative hearings, written decisions and administrative appeals.

*Id*.

The Secretary of the Treasury (the "Secretary") has the authority to "regulate the practice

of representatives of persons before the Department of the Treasury." 31 U.S.C. § 330(a). This

authority also vests in the Secretary the power to suspend or disbar an individual from practice

for a number of reasons after the individual is accorded "notice and opportunity for a

---

4          Citing two Second Circuit decisions, the plaintiff argues that the defendants' actions
          "explicitly require an Article III judicial hearing." Pl.'s Mot. at 3-4 (citing *Schulz v. IRS*,
          395 F.3d 463 (2d Cir. 2005) ("*Schulz I*"), and *Schulz v. IRS*, 413 F.3d 297 (2d Cir. 2005)
          ("*Schulz II*")). The court in these cases, however, ruled that the IRS's administrative
          summonses must be backed by a federal court order before the IRS can impose
          consequences on taxpayers for a failure to comply with the summonses. *Schulz I*, 395
          F.3d at 465; *Schulz II*, 413 F.3d at 303-304. The court relied on *Oklahoma Operating
          Company v. Love*, 252 U.S. 331, 333 (1920), for the proposition that constitutional due
          process rights are violated when a legislative scheme "denies subjects an opportunity to
          seek judicial review of administrative orders except by refusing to comply, and so put
          themselves in immediate jeopardy of possible penalties 'so heavy as to prohibit resort to
          that remedy.'" *Schultz II*, 413 F.3d at 303. These cases have no bearing on the current
          issue. The matter at hand does not involve an administrative order compelling action on
          the part of the plaintiff, but rather, an administrative action taken by the government to
          regulate individuals practicing before it. And, the plaintiff here is not being denied
          judicial review of the administrative action. To the contrary, he has sought judicial
          review of the action in this court by way of the Administrative Procedures Act, and that
          review is currently pending.

proceeding." *Id.* at § 330(b).  At least one court has determined that an individual in the

plaintiff's circumstances is only "entitled to the requisites of elementary fairness – due notice and

the opportunity to be heard." *Washburn v. Shapiro*, 409 F. Supp. 3, 10 (D. Fl. 1976).  Here, the

plaintiff received written notice of the charges and 30-day stay in proceedings in which the

plaintiff could respond to the allegations.  AR at 1089.  He also received a hearing before an

ALJ, at which he argued his case, prior to the initial disbarment decision.  *Id*. at 265-277.  In

addition, the plaintiff received (1) an appeal, a decision on appeal and a remand, *id*. at 32-91, (2)

a hearing and decision on remand, *id*. at 230-64, and (3) a second decision on appeal, *id*. at 24-

30.  This procedure is more than sufficient to satisfy the due process requirements of the statute,

namely, "notice and an opportunity to be heard." *Washburn*, 409 F. Supp. at 10.   Therefore, the

plaintiff fails to demonstrate a likelihood of success on the merits of his due process claims.

### c.    The Plaintiff has Not Demonstrated that the Defendants Wrongfully Published Notice of his Disbarment

The plaintiff's claim that the defendants wrongfully and prematurely published notice of

his disbarment suffers from the same lack of support as his due process claim.  Pl.'s Mot. at 3.

Although he does not specify in what way the publication was "premature," the court presumes

that the plaintiff is alleging that the notice was published prior to him receiving the due process

to which he was entitled in the disbarment process.  The court concluded, *supra*, that the plaintiff

received all the due process extended to him by the statute, and the plaintiff has offered nothing

to demonstrate otherwise.  The plaintiff, therefore, has made an insufficient showing that the

defendants wrongfully or "prematurely" published notice of his disbarment.  *Mazurek*, 520 U.S.

at 973 (explaining that "a preliminary injunction is an extraordinary and drastic remedy, one that

should not be granted unless the movant *by a clear showing*, carries the burden of persuasion")
(internal citation omitted).

### 2.    The Plaintiff has Demonstrated Irreparable Injury

The plaintiff argues that he suffers and will continue to suffer irreparable injury as a result

of his disbarment and the publication of the notice of his disbarment. Pl.'s Mot. at 5. Claiming

that he cannot maintain his business and that his reputation and livelihood will be destroyed, the

plaintiff believes his injury is both imminent and irreparable. *Id*. at 3, 5. The defendants counter

simply that "[t]he harms to the plaintiff's business are typical in any case of disbarment." Defs.'

Opp'n at 2.

Because the plaintiff has not demonstrated a likelihood of success on the merits, he must

make a very strong showing of irreparable injury. *Apotex, Inc. v. Food & Drug Admin.*, 2006

WL 1030151, at *16 (D.D.C. Apr. 19, 2006). "If the plaintiff makes a particularly weak showing

on one factor . . . the other factors may not be enough to 'compensate' . . . [and it] is particularly

important for the plaintiff to demonstrate a substantial likelihood of success on the merits."

*Pharm. Research and Mfrs. of Am. v. U.S.*, 135 F. Supp. 2d 1, 7-8 (D.D.C. 2001) (internal

citations omitted). The plaintiff has not successfully compensated for his failure to demonstrate a

likelihood of success on the merits.

It is well established that economic loss is insufficient to demonstrate irreparable injury.

*Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (*per curiam*). Nevertheless,

economic harm that threatens the very survival of a business may constitute irreparable injury

and warrant an injunction. *Apotex*, 2006 WL 1030151, at *16 (quoting *Gulf Oil Corp. v. Dept. of

Energy*, 514 F. Supp. 1019, 1025 (D.C. Cir. 1981)).

Although he offers no explanation of the scope of his practice, the plaintiff asserts that his disbarment will destroy his business. Assuming *arguendo* that the plaintiff's business substantially, if not entirely, comprises representing clients before the IRS, his inability to do so fundamentally threatens the existence of his business. But, the extraordinary relief of an injunction is not merely a protection against harm. Rather, it is a protection against an alleged harm for which an individual is likely to succeed on the merits of his underlying claims, and injunctive relief will never be granted unless a claimant can demonstrate "a fair ground for litigation." *Katz v. Georgetown Univ.*, 246 F.3d 685, 688 (D.C. Cir. 2001) (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977)). Here, the plaintiff's showing of success on the merits is very weak. His showing of harm, therefore, is insufficient to secure the injunctive relief he seeks. *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 183 n.2 (D.C. Cir. 2006) (stating that a preliminary injunction is improper when a plaintiff has demonstrated no likelihood of success on the merits) (citing *Michigan State v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997)); *Gulf Oil Corp.*, 514 F. Supp. at 1026 (stating that the determination of injury is one made based upon the facts of each particular case, and it must be considered along with the probability of success on the merits) (citing *Jacksonville Port Auth. v. Adams*, 556 F.2d 52 (D.C. Cir. 1977)).

### 3.    Injury to Other Parties and Public Interest Considerations

The plaintiff argues that no parties will be injured if the court grants an injunction. Pl.'s Mot. at 5. In addition, he represents that an injunction "will further the public interest, as small businesses are the driving force or [sic] our economy." *Id*. The government stunningly argues in

one run-on sentence, devoid of legal support, that the plaintiff has made no showing of irreparable injury or public interest. Defs.' Opp'n at 2-3.

Because it concludes that the plaintiff has not demonstrated a likelihood of success on the merits, the court need not linger long to discuss injury to other parties and public interest considerations. The court can identify no "other parties" that will be harmed by an injunction. Instead, weighing significantly against the plaintiff's request, "[i]t is in the public interest to deny injunctive relief when the relief is not likely deserved under law." *Qualls v. Rumsfeld*, 357 F. Supp. 2d 274, 287 (D.D.C. 2005).

## IV.   CONCLUSION

For the foregoing reasons, the court denies the plaintiff's motion for injunctive relief. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 3rd day of August, 2007.

RICARDO M. URBINA
United States District Judge